UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REGINA ANN WIEHN,

    Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

No. 2:12-cv-01517 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born November 25, 1961, applied for DIB and SSI benefits on August 25, 2009, alleging disability December 2, 2008.[1] Administrative Transcript ("AT") 176 & 183. Plaintiff alleged she was unable to work due to cervical strain, back strain, and pain following an on-the-

---

[1] Under the Act, payment of SSI benefits is precluded for any months prior to the month the application was filed, regardless of the alleged onset date of disability.

1

job accident. AT 248. In a decision dated January 3, 2011, the ALJ determined that plaintiff was not disabled.[2] AT 29-38. The ALJ made the following findings (citations to 20 C.F.R. omitted):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since December 2, 2008, the alleged onset date.

3. The claimant has the following severe impairments: herniated disc lumbar spine and chronic pain.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that the claimant is limited to work that involves: only occasional climbing of ropes, ladders, and scaffolds, and only occasional stooping and crawling; no concentrated exposure to hazards; the ability to understand, remember, and carry out simple instructions, and to make judgments on simple work-related decisions; only occasional interaction with the public; and the ability to respond appropriately to usual work situations and changes in a routine work setting.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on November 25, 1961 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 2, 2008, through the date of this decision.

AT 31-37.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ's determination that plaintiff had no severe cervical spine impairment is erroneous; (2) the ALJ failed to properly evaluate the medical opinion of a treating physician, Dr. Navnit Bhatia; (3) the ALJ's residual functional capacity determination is erroneous; and (4) the ALJ's determination that plaintiff can perform work existing in significant numbers in the national economy and therefore not disabled is erroneous. ECF No. 17 at 5. Plaintiff, however, does not address these issues in turn. Instead, plaintiff has briefed this Court on the following

3

issues: (1) the ALJ erred by not finding that plaintiff had a severe cervical spine impairment; (2) by mischaracterizing evidence, the ALJ failed to accord appropriate weight to the medical opinion of treating physician Dr. Bhatia; and, (3) Dr. Bhatia's treating source opinion supports a finding of disability.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////
/////
/////

ANALYSIS

    A. Step Two Analysis

Plaintiff contends the ALJ committed error at step two by failing to find that her cervical spine impairment was severe. An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund, 253 F.3d at 1158. Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523. The ALJ determined that plaintiff's herniated disc lumbar spine and chronic pain impairments were severe. AT 31. Thus, plaintiff passed through the de minimis screening device that is step two.

Plaintiff seems to assert that because she was diagnosed with a cervical strain, her condition should have been found to be a severe impairment. ECF No. 17 at 14-15. However, a mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities. Put another way, a medical diagnosis does not result in a severe impairment. Regardless, because the ALJ found that plaintiff had a severe impairment at step two, the ALJ went on to consider how all of plaintiff's impairments, both severe and non-severe, limited her ability to work when determining her residual functional capacity (RFC). AT 34-35 (in assessing plaintiff's residual functional capacity, ALJ considered plaintiff's neck complaints). Therefore, there was no error at step two.

    B. Dr. Bhatia's Medical Opinion

Plaintiff contends the ALJ committed error in failing to accord appropriate weight to treating physician Dr. Bhatia's medical opinion. ECF No. 17 at 14. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is

given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In assessing Dr. Bhatia's medical opinion, the ALJ found that Dr. Bhatia treated plaintiff for an extended period of time and initially restricted plaintiff to 4 hours of work per day. AT 35. The ALJ noted that Dr. Bhatia observed that plaintiff had a normal range of motion in both upper and lower extremities, had a normal gait, could heel/toe walk, and had a negative straight leg raising test bilaterally. Id. The ALJ then noted that these findings were confirmed by several other people. Id. The ALJ also noted that Dr. Bhatia declared plaintiff would return to work with limitations as on her permanent and stationary form in July of 2009. Id.; AT 415. The ALJ did not explicitly state how much weight was given to Dr. Bhatia's opinion, but implicitly assigned this opinion little weight, noting the lack of clinical findings supporting the restrictive limitations assessed by this physician. Id.; see Meanel v. Apfel, 172 F.3d at 1113.

/////

1     Plaintiff asserts that the restrictions Dr. Bhatia placed on her ability to work were not
2 properly assessed. ECF No. 17 at 15-18. On January 28, 2009, Dr. Bhatia recommended that
3 plaintiff could return to work with limited standing, walking, overhead work of the bilateral
4 shoulder, stooping, bending, kneeling, squatting, lifting, pulling, and use of the bilateral hands.
5 AT 585. Dr. Bhatia also recommended no repetitive work with the bilateral hands, no pushing
6 over 10 pounds, 5 minute breaks every 45 minutes, and that plaintiff could work 4 hours a day.
7 Id. Plaintiff maintains that these restrictions remained in place throughout Dr. Bhatia's treatment
8 of plaintiff. ECF No. 17 at 16. However, the last time Dr. Bhatia explicitly mentioned these
9 restrictions was on May 19, 2009. AT 570. From July 1, 2009 through the January 13, 2010, Dr.
10 Bhatia noted that plaintiff could return to work with the limitations as stated on her work status
11 form. AT 413, 415, 415, 419, 421, 564, 566. During that time, on October 28, 2009, Dr. Bhatia
12 completed a "musculoskeletal" form in which he noted the following: no swelling, warmth,
13 redness, or tenderness; no paravertebral muscle spasm or tenderness; no neurological
14 abnormalities pertaining to sensation, reflex, or motor; a negative straight leg test both sitting and
15 supine; 5/5 active movement against full resistance without fatigue (normal strength); no atrophy
16 present; and an anticipated 6 month duration of symptoms. AT 409-11. These findings are
17 supported by other opinions in the record, in which plaintiff was found to have normal reflexes,
18 strength, gait, muscle tone, sensation, and range of motion. AT 323, 331, 364-65, 433, 518.
19 There is also evidence in the record that plaintiff's symptoms improved with conservative
20 treatment, including physical therapy. AT 34-35, 361, 393, 395, 396, 398, 414, 580. Also, an
21 MRI on plaintiff's neck showed only mild degenerative disc disease. AT 388. The inconsistency
22 between Dr. Bhatia's initial restrictions and his objective findings, as well as those from other
23 physicians, which indicate that plaintiff's symptoms have improved, undermine the plaintiff's
24 assertion that the ALJ failed to properly assess Dr. Bhatia's opinion.
25     Rather than crediting the opinion of Dr. Bhatia, the ALJ gave significant weight to the
26 opinion of examining physician Dr. Michael Bass, noting that Dr. Bass's RFC is consistent with
27 other evidence in the record and with the ALJ's RFC. AT 35. Dr. Bass found that plaintiff could
28 stand and/or walk for up to 6 hours in an 8 hour day and sit for up to 6 hours in an 8 hour day

without assistive devices. AT 434. Dr. Bass also found that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently in an 8 hour day; could occasionally do climbing, balancing, stooping, kneeling, crouching, or crawling; could do frequent reaching, handling, fingering, and feeling; and, had no environmental limitations. Id. This opinion is supported by substantial objective evidence in the record and is much less restrictive than Dr. Bhatia's opinion.

Dr. Bhatia's opinion was contradicted by that of Dr. Bass, who assessed limitations supported by his own independent clinical findings. The ALJ also relied on the opinions of the state agency physicians, whose opinions were in accord with that of Dr. Bass. AT35, 468-474, 537-538. The ALJ accordingly acted within the scope of her authority in resolving the conflict. See Andrews, 53 F.3d at 1041.

### C. RFC and Disability Determination

Plaintiff argues that because Dr. Bhatia's opinion should be fully credited the ALJ erred in making her RFC determination. ECF No. 17 at 18. This is based only on plaintiff's previous argument that the ALJ erred in assessing Dr. Bhatia's medical opinion. Id. As previously stated, this Court finds that the ALJ did not error in assessing Dr. Bhatia's opinion and that there is no reason to credit Dr. Bhatia's opinion as a matter of law. The ALJ's RFC determination is well supported by substantial evidence in the record. Therefore, the ALJ did not error in her finding that plaintiff is not disabled.

### CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted; and,

3. Judgment is entered for the Commissioner.

Dated: August 14, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

33/4 wiehn1517.ss